Deborah A. Ferguson, ISB No. 5333
The Law Office of Deborah A. Ferguson, PLLC
202 N. 9th Street
Suite 401 C
Boise, Idaho 83702
Telephone: (208) 484-2253
Email: d@fergusonlawmediation.com

Special Master

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DORNOCH HOLDINGS INTERNATIONAL, LLC and DORNOCH GLOBAL, LLC, both Nevada Limited Liability Companies; and SMITH INDIVIDUALS/ENTITIES I-XX, Plaintiffs, v. CONAGRA FOODS LAMB WESTON, INC., a Delaware corporation; CONAGRA INTERNATIONAL COMERCIAL Y AGRICOLA LIMITADA, a Chilean limited liability company; and DOE INDIVIDUALS/ENTITIES I through XX, Defendants. | Case No. 1:10-cv-00135 TJH  **REPORT AND RECOMMENDATION OF SPECIAL MASTER** |

SPECIAL MASTER'S REPORT AND RECOMMENDATION-                                     1

Pending before the Court are Defendants' objections to the Special Master's privilege log (Dkt.243). The Special Master produced the privilege log on February 4, 2013 (Dkt. 233). On February 28, 2013 the Court referred the following three objections to the Special Master for a Report and Recommendation (Dkt. 254):

1. The documents on the privilege log, except for communications between Plaintiffs and their outside litigation counsel dated after March 22, 2010, have not been established by Plaintiffs to be privileged;

2. The privilege log was created using overly broad search terms and has not been substantively reviewed, thus, the log contains numerous non- privileged documents; and

3. Non-correspondence documents listed on the privilege log are not privileged.

Further, the Court held that to reach a recommendation concerning the second objection, the Special Master could review a statistically significant number of randomly selected documents from the privilege log to confirm the accuracy of the screening method employed to create it. (Dkt. 254 at 2). Having reviewed the record, and conducted a sampling from the privilege

log, the Special Master recommends the following with respect to Defendants' objections.

> **Objection No. 1**: The documents on the privilege log, except for communications between Plaintiffs and their outside litigation counsel dated after March 22, 2010, have not been established by Plaintiffs to be privileged.

Defendants assert that the documents on the privilege log, except for communications between Plaintiffs and their outside litigation counsel dated after March 22, 2010, have not been established by Plaintiffs to be privileged. Further, Defendants argue that Plaintiffs bear the burden of demonstrating that the attorney-client work product and work product doctrine apply in this case. In support of this proposition, Defendants cite *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1099 (9th Cir. 2007) and Fed. R. Civ. P. 26(b)(5)(A)(ii), which requires a party withholding information on a claim of privilege "describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." In *In re Excel Innovations, Inc.*, 502 F.3d at 1099 the Court noted that "[o]rdinarily, the party asserting attorney-client privilege has the burden of establishing all of the elements of the privilege."

In this case, the Special Master was directed by the Court to obtain the electronically stored information ("ESI") of Unisur Alimentos Limitada

("Unisur") Chilean bankruptcy estate held by its bankruptcy trustee ("Trustee"), review it for privilege, and prepare a privilege log for the Court and Parties. (Dkt. 188 at 1). The Court instructed the Special Master to keep all of the ESI confidential until directed to release it. *Id.* The Plaintiffs did not have access to the ESI released from the Trustee to the Special Master until it after had been screened and a privilege log created. After the non-privileged ESI was released to the Defendants, the Plaintiffs were given access to the entire data population (privileged and non-privileged documents) and continue to have this access.

With the technical assistance of FTI Consulting, Inc. ("FTI"), the Special Master screened the huge volume of ESI released by the Trustee for privileged documents.  Once this initial screening was accomplished, however, it did not transfer the Plaintiff's burden, as set forth in Federal Rule of Civil Procedure 26(b)(5)(A)(ii), to the Special Master to further assert and defend Plaintiffs' privilege.  As the ESI in question is the Plaintiffs' data, Plaintiffs continue to have the right to assert privilege where Plaintiffs deem appropriate. Accordingly, the Special Master recommends that the Court sustain this objection, to the extent that Plaintiffs have had access to the privileged documents since their release in February 2013 and any privilege connected to Plaintiffs' ESI remains Plaintiffs' privilege.

**Objection No. 2**: The privilege log was created using overly broad search terms and has not been substantively reviewed, thus, the log contains numerous non- privileged documents.

To reach a recommendation regarding the Defendants' second objection, the Special Master reviewed a statistically significant number of randomly selected documents from the privilege log to test the accuracy of the screening method employed to create it.

A. Review of the Special Master's ESI screening process

Plaintiffs' counsel provided a list of suggested search terms to the Special Master on November 30, 2012 and then a second list on January 25, 2013.[1] As the later list was less detailed it was presumed to supplement the earlier more extensive list. FTI and the Special Master then refined the list by adding other privileged search terms, and removing ineffective ones, to create a privilege screen for the approximately 1.3 million documents filtered. The Special Master's Report (Dkt.214, at 10-13) sets forth the final list of the privilege filter terms selected. The total number of documents selected by the privilege screen was 28,894 (this rose to 43,264 when email attachments and family members were included), or approximately 3% of

---

[1] As the ESI originated from Plaintiffs, Defendants were not asked to participate in the selection of privilege search terms.

SPECIAL MASTER'S REPORT AND RECOMMENDATION-                                       5

the population.[2] The Special Master and FTI expended significant effort in creating, testing and refining the privilege screen terms to minimize the number of false positive documents identified. That said, it was certain that some of the documents selected by the search terms were false positives, and non-privileged.

Two general points are worthy to note concerning the data population. First, the Trustee was requested to turn over to the Special Master all the ESI he had in his possession and control, which encompassed more documents than would have been responsive to the discovery requests. Second, no relevancy screen has been applied to the ESI, as Plaintiffs objected to the Special Master's suggestion of a relevancy screen or refinement of the data population in this manner. (Dkt. 214, at 13).

B. Testing of privileged documents

In order to test the effectiveness of the privilege screen, the Special Master requested that FTI create a statistically valid sample from the privilege log to review. Based on FTI's expertise and statistical science, to predict the total results from a representative sample with 99% accuracy, +/- 3% (or a rate of accuracy between 100% and 96%) FTI determined that

---

[2] FTI originally reported slightly larger numbers, or 29,559 (which rose to 44,396 with family and attachments). Communications to or from ConAgra already released to the Defendants were inadvertently included by the screen, and then removed. Sixteen other documents with technical issues were also removed.

1,740 documents would need to be human reviewed. FTI randomly selected 1,740 documents from the total population and then added an additional 73 documents to ensure that each individual privilege screen term was proportionately represented in the sample. In total, the Special Master reviewed 1,813 documents. Each document contained one or more of the privilege terms, and the total number of individual term "hits" in the sample was 5,056.

Some of these documents were in Spanish. In the Special Master's review, where there was any question that a Spanish document might be privileged, the document was marked by the Special Master and set aside for a Spanish language review conducted by FTI. In total, the Special Master tagged 366 documents in this manner. In some instances it was apparent to the Special Master from the face of the document, such as an advertisement, that it was not privileged and it was not necessary for this separate review. The Special Master informed the Spanish reviewers of the correct attorney client privilege standard applicable to this case, to obtain consistency between the English and Spanish review.

C. Applicable privilege standard

1. Attorney client privilege

Because this case is based on diversity jurisdiction, Idaho law governs the application of the attorney client privilege. Fed. R. Evid. 501.[3] *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987); *United Heritage Prop. & Cas. Co. v. Farmers Alliance Mut. Ins. Co.,* Case No. 10-cv-456-BLW (D. Idaho, March 1, 2011).

In Idaho, the general rule of attorney client privilege is codified in Idaho Rule of Evidence 502(b), which states:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client which were made (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, (2) between the client's lawyer and the lawyer's representative, (3) among clients, their representatives, their lawyers, or their lawyers' representatives, in any combination, concerning a matter of common interest, but not including communications solely among clients or their representatives when no lawyer is a party to the communication, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

Accordingly, the Special Master applied Idaho Rule of Evidence 502(b) when reviewing the sample for documents protected under the attorney client privilege and instructed the Spanish reviewers to do the same.

---

[3] Rule 501. Privilege in General. The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision. (As amended Apr. 26, 2011, eff. Dec. 1, 2011.)

SPECIAL MASTER'S REPORT AND RECOMMENDATION-                                            8

A. Work product doctrine

The work product doctrine is governed by federal law, and codified in Federal Rule of Civil Procedure 26(b)(3) protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *In re Grand Jury Supeona*, 357 F.3d 900, 906 (9th Cir. 2004); *Truckstop.Net, L.L.C. v. Sprint Commc'ns Co.*, Nos. CV-04-561, CV-05-138, 2007 WL 2480001, at *5 (D. Idaho Aug. 29, 2007). The Special Master and the Spanish reviewers applied Federal Rule of Civil Procedure 26(b)(3) to the work product privilege review.

B. Results of sampling

Of the 1,813 total documents reviewed for the sample, 1,249 were determined not to be privileged (68.9%) and 564 privileged (31.1%). Some terms were very effective at identifying privilege and others were not effective at all. It was readily apparent that the results were less effective when more general search terms were used. For example, "privileg* NOT w/25 (intended or received or dissemination or addressee)" was not an effective search term, with a 13% correlation that hit 5,579 times in the test sample.

The privilege search terms, and their correlation with actual privileged documents found in the sample set is attached as Exhibit A.[4] The number of documents in the sample set selected by each privilege term, and the privilege findings after human review is attached as Exhibit B, 1-8. The "By Term" pages include all documents reviewed, including multiple search term hits in the same document, and the "Single Term" pages reflects those documents in the sample selected by only a single privilege term.

An analysis of these results shows that 73% of the search terms in the privilege filter proved to be well correlated with actual privilege, and many were highly correlated.

- 34% of the terms found 100% of the sample documents privileged;

- 15% of the terms found 90% to 99% of the sample documents privileged;

- 15% of the terms found 75% to 89% of the sample documents privileged; and

---

[4] The final search term list from the sample test (Exhibit A) has 12 fewer terms than originally appeared in the Special Master Report. (Dkt.214, p.10-13). The 12 missing terms had no hits on any documents and therefore did not re-appear in the sample or the total privilege population.

SPECIAL MASTER'S REPORT AND RECOMMENDATION-           10

- 9% of the terms found 59% to 74% of the sample documents privileged.

The difference between the relatively high percentage of terms that were reasonably precise (73%) compared to the relatively low percentage of actual privilege found (31.1%) indicates the imprecise, general terms provided the bulk of the false positive documents. Based on these results, it is unlikely the individual search terms could be further refined to have higher precision. However, to tighten the screen, the less precise terms could be removed.

### C. Recommendations as to Second Objection.

The sample test of 1,813 documents identified which privilege search terms were well correlated and precise and those that were imprecise and poorly correlated with the privilege documents. After the Special Master's analysis of the sampling results with FTI's technical assistance, it was determined that those terms which identified a correlation with actual privilege of 59% or greater, showed a strong correlation with privilege.

In determining the correlation between individual search terms and the sample review findings of privilege, the Special Master and FTI examined both the precision of each search term when the term was the only privilege term found in a document, and when it appeared in a document

with other terms. Search terms that were well correlated with the findings of privilege (over 65% of either the total sample or the single term precision) are included in the privilege list recommended to remain withheld.

In most cases, the precision of a term was similar when examining the total sample or the single term only. In two cases, however, while the total sample finding was below a 65% correlation (62% and 59%, specifically) the single term precision was 100% and therefore those two terms are included in the list recommended to remain withheld and the threshold was lowered to 59% to include them.

Once the documents below this threshold have been excluded, the effectiveness of the screen increases to 87%. This is primarily due to the large number of terms (59 of the 73 effective terms) in the screen that were correlated with privilege at 90% or above. Accordingly, the Special Master recommends that documents that meet this 59% threshold continue to be withheld as privileged.

If Defendants wish to further challenge the assertion of privilege over documents that have demonstrated a 59% or greater correlation with privilege from the test sample, Defendants can request further human review of withheld documents above that threshold. The Special Master would review the associated documents across the whole population (less the

documents already reviewed in the sample set). This could be targeted at particular search terms, to refine the review. The Defendants would be responsible for cost of this further analysis.

The Special Master further recommends that the documents associated with the less precise terms that fall beneath a 59% correlation with privilege be released. This will result in a known release of some privileged documents but requires no additional cost or review. Federal Rule of Evidence 502(b) provides protection for inadvertently disclosed documents. Federal Rule of Evidence 502(b)(3) specifically identifies compliance with Federal Rule of Civil Procedure 26(b)(5)(B) as an example of reasonable post-production remedial action.[5] In addition, a "claw back" agreement between the Parties, entered in the early stages of discovery also requires the return of inadvertently disclosed privileged documents.

Plaintiffs also have the option of conducting a further privilege review of all or a portion of the population to be released. This would require that the Plaintiffs create a supplemental privilege log, for the additional

---

[5] Federal Rule of Civil Procedure 26(b)(5)(B) states: If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

SPECIAL MASTER'S REPORT AND RECOMMENDATION- 13

documents selected as privileged below the 59% threshold. The Plaintiffs would be responsible for the cost of this further analysis, if Plaintiffs chose to conduct it.

**Objection No. 3**: Non-correspondence documents listed on the privilege log are not privileged.

For each document withheld as privileged, the privilege log identifies the type of document listed. A document can exist in a variety of formats. For example, a document may be a "pdf" or a portable document format, a JPEG/JFIF image (typically a photograph), a Microsoft Word document, or "TIF" tagged image file format. However, the format of a document alone does not determine whether a document is privileged. Memorandums, letters, transcripts, facsimile documents or preserved copies of email can be prepared and stored in a wide variety of formats. It is not possible to determine whether a particular document is privileged based solely on its type or format.

Likewise, privilege cannot be determined simply by whether the document is "correspondence" or "non-correspondence" as Defendants assert. (Dkt. 243 at 8-9). Attorneys or third parties engaged by counsel can create non-correspondence documents as work product. Common examples would be charts, photographic evidence, and numeric data summaries.

Likewise, non-correspondence documents can be protected by the attorney client privilege. Accordingly, documents in the privilege log cannot be determined not to be privileged and thereby released on the basis of either document type or because they appear to be "non-correspondence" in nature.

## RECOMMENDATIONS

Based on the foregoing, the Special Master recommends:

1. That the Court sustain the first objection, as to Plaintiffs' burden under Federal Rule of Civil Procedure 26(b)(5)(A)(ii), to the extent that Plaintiffs now have access to their privileged documents.

2. As to the second objection, the Special Master recommends that the Court:

   a. Concur with the selection of a 59% or greater correlation of search term precision for a document to remain withheld as privileged;

   b. Allow Defendants the opportunity to further challenge the assertion of privilege above that 59% threshold, if they so choose, by requesting that the Special Master conduct a further targeted review for privilege and release any non-privileged

documents discovered. The Defendants will be responsible for cost of this further analysis, if requested;

c. Release the documents associated with the less precise terms that fall beneath the 59% correlation threshold and remove them from the privilege log;

d. Prior to that release, allow Plaintiffs the opportunity to conduct a privilege review of all or a portion of the population to be released and create a supplemental privilege log. The Plaintiffs will be responsible for cost of this further analysis, if Plaintiffs chose to conduct it.

3. That the Court overrule the third objection.

The Parties have 10 days to file objections to, or a motion to adopt or modify this Report & Recommendation.

DATED: May 1, 2013

_____
Deborah A. Ferguson
Special Master

SPECIAL MASTER'S REPORT AND RECOMMENDATION-                    16