Thomas A. Banducci (ISB No. 2453)
tab@andersenbanducci.com
Steven B. Andersen (ISB No. 2618)
sba@andersenbanducci.com
Wade L. Woodard (ISB No. 6312)
wlw@andersenbanducci.com
ANDERSEN BANDUCCI PLLC
101 South Capitol Boulevard, Suite 1600
Boise, ID 83702-7720
Telephone     208.342.4411
Facsimile     208.342.4455

*Attorneys for Plaintiffs Dornoch Holdings International, LLC,*
*Dornoch Global, LLC, and Smith Individuals/Entities I-XX*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DORNOCH HOLDINGS INTERNATIONAL, LLC and DORNOCH GLOBAL, LLC, both Nevada Liability Companies; and SMITH INDIVIDUALS/ENTITIES I-XX.<br><br>    Plaintiffs,<br><br>    vs.<br><br>CONAGRA FOODS LAMB WESTON, INC., a Delaware corporation; CONAGRA INTERNATIONAL COMERCIAL Y AGRICOLA LIMITADA, a Chilean limited liability company; and DOE INDIVIDUALS/ENTITIES I through XX.<br><br>    Defendants. | Case No. 1:10-cv-00135-TJH<br><br>**PLAINTIFFS' RESPONSE TO REPORT AND RECOMMENDATION OF SPECIAL MASTER (DKT. 311)** |

Plaintiffs Dornoch Holdings International, LLC and Dornoch Global, LLC, ("Plaintiffs")

provide this Response to the Report and Recommendation of the Special Master (Dkt. 311).

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2012, the Court directed counsel to confer and agree on a process whereby Unisur's ESI in Chile could be gathered, reviewed and segregated for privilege.  The Court indicated that if the parties could not agree on a process, the Court would appoint a Special Master (Dkt. 178).  Pursuant to the Court's order, counsel met and conferred in late November.  Counsel for Plaintiffs believed (at that time) they were very close to agreement on a process whereby Plaintiffs' counsel would have reviewed the potentially privileged ESI obtained from the computers and hard drives at Unisur, and create a log identifying privileged materials. (*See* Dkt. 187 and accompanying exhibits). Counsel for LW chose to unilaterally abandon these discussions and informed the court that a Special Master would be required to perform that function. (Dkt. 186).

Both parties agreed to the appointment of Deborah Ferguson as Special Master.  (Dkt. 247-1 at Ex. B.)  The Court appointed Ms. Ferguson to this position, directing as follows:

> It is further Ordered that the Special Master shall, upon receipt from the Trustee, review the electronically stored information and prepare a privilege log for the Court and the parties. Any items identified by the Special Master as possibly subject to a privilege held by Plaintiffs will be reviewed by the Court, in camera.
> It is further Ordered that upon filing of the privilege log, the parties shall have 14 days to file written objections with the Court, and then 7 days to file a written response to the objections. The Court will then make a final determination as to privilege for each item in dispute.

(Dkt. 188.)  Plaintiffs submitted search terms to be employed in creating the privilege filter.  LW did not object to such search terms being used. (Dkt. 247-1 at Ex. A.)  After months of delay (and an extension of time granted by the Court to complete discovery of the ESI), the Trustee provided access to the ESI. Unfortunately, access was granted only two business days before the extended discovery cutoff.  This meant that the Special Master had only a few days to direct the

recovery of the ESI and create a privilege log.  Using the stipulated search terms, the privilege filter identified more than 40,000 documents.  These documents were identified by the Special Master on the privilege log, after a laborious process described in paragraph 12 of the Special Master's Report (Dkt. 214), which process included sampling and refinements of the search terms over a three-day period, with the express purpose of including privileged documents while excluding non-privileged documents.

When the Special Master provided parties access to the privilege log, counsel for LW, Nicole Hancock, asked the Special Master in an email dated February 5, 2013, if she would do a more "targeted privilege review" to remove what she believed were non-privileged materials listed in the log (Dkt. 247-1 at Ex. C). The Special Master responded on the same day that the "privilege review is complete."  (*Id.* at Ex. D)  Not satisfied with that response, Ms. Hancock sent counsel for Plaintiffs an email on February 6, 2013, requesting counsel for Plaintiffs to go through the documents identified in the privilege log. (*Id.* at Ex. E)  Counsel for Plaintiffs declined to do so. The parties had already paid the Special Master a significant amount of money to conduct this review, and a further privilege review by the Plaintiffs was not contemplated or required by the Court's Order giving the Special Master sole responsibility for this task.

On February 19, 2013, Defendant ConAgra Foods Lamb Weston ("LW") filed an objection to the Privilege Log, arguing that broad categories of documents were not privileged. (Dkt. 243.)  Plaintiffs provided a response on February 26, 2-13 (Dkt. 247), which response is incorporated herein as if set forth in full.  The Court referred LW's objection to the Special Master (Dkt. 254), directing her to provide an opinion on three issues:  (1) whether documents on the privilege log, except for communications between Plaintiffs and their outside litigation counsel dated after March 22, 2010, have not been established by Plaintiffs to be privileged;

(2) whether the privilege log was created using overly broad search terms; and (3) whether non-correspondence documents listed on the privilege log are not privileged. The Special Master issued a Report and Recommendation on these issues on May 1, 2013 (Dkt. 311).

## ARGUMENT

**A.      Plaintiffs Had No Obligation to Produce a Supplemental Privilege Log**

In their initial briefing, LW argued that the Privilege Log created by the Special Master did not sufficiently describe the documents such that the claim of privilege could be assessed, except as to emails sent or received from the domain names of outside counsel. They therefore argued that, as to all else, this log <u>created by the Special Master</u> constituted a failure by the <u>Plaintiffs</u> to meet their burden to establish privilege. This question was referred to the Special Master. The Special Master recommended that the Court hold that the Plaintiffs had not met their burden because Plaintiffs should have re-reviewed the documents and separately asserted their right to their privilege.

This is a baffling recommendation. The Court specifically and explicitly directed the Special Master to create the privilege log—that is, the document in which the Plaintiffs' privileged communications in various documents was asserted and memorialized. The Court directed that: "the Special Master shall, upon receipt from the Trustee, review the electronically stored information <u>and prepare a privilege log for the Court and the parties</u>." (Dkt. 188 (emphasis added).) The Court then outlined a short schedule of Motions practice immediately following the release of the Privilege Log wherein the parties could object and respond to the log, with the ultimate determination of privilege to be left to the Court. (*Id.*) This Order neither contemplated, required, nor left sufficient time for a second privilege review and log to be generated by Plaintiffs.

PLAINTIFFS' RESPONSE TO REPORT AND RECOMMENDATION OF SPECIAL MASTER (DKT. 311) – 4

Prior to the appointment of the Special Master, Plaintiffs had proposed a procedure whereby <u>they</u> would have reviewed the ESI and generated a privilege log.  Instead, LW unilaterally demanded the appointment of a Special Master to conduct this task, at considerable expense to Plaintiffs.  Now, they argue that the very procedure they demanded was insufficient and that Plaintiffs should be forced to pay the price by the release of the documents that the Special Master has already flagged as privileged.  It should be noted that Plaintiffs believe that the Special Master did an admirable job, and that her privilege log is a proper assertion of the privilege, which they adopt.  Notably, the Special Master did <u>not</u> find that the log she generated was deficient or insufficient to assert the privilege.  Plaintiffs should not be punished for assuming that the privilege log, created by the Special Master upon explicit instructions of the Court, was somehow insufficient to assert their privilege.

**B.      Special Master's Statistical Analysis**

The Special Master engaged in a statistical analysis to examine the correlation between the search terms she employed to identify privileged documents and whether those documents were in fact privileged.  The Special Master stated that many of the search terms were well-to-highly correlated with documents that contained privileged.  She determined that if a document was identified using terms which had a statistical correlation rate of 59 percent or greater, such document should remain withheld, with the opportunity for LW to request a further human review of these withheld documents at their own expense.  Plaintiffs do not disagree with this recommendation.

As to the Special Master's recommendation with respect to documents with a statistical correlation rate of less than 59 percent, the Special Master has recommended that those documents be released, while admitting that "[t]his will result in a known release of some

PLAINTIFFS' RESPONSE TO REPORT AND RECOMMENDATION OF SPECIAL MASTER (DKT. 311) – 5

privileged documents." (Dkt. 311 at p. 13.)  The Special Master suggests that the parties rely on the ethical responsibilities of counsel and claw back protections of Federal Rule of Evidence 502(b); that is, that LW be entrusted with both notifying Plaintiffs if they come into privileged documents, and destroy/delete all copies of such documents.  Plaintiffs strongly object to this procedure.  LW has not proved reliable when it comes to Plaintiffs' privilege.  As noted elsewhere, Plaintiffs have strong physical proof that their privileged material has already been accessed and copied to unknown locations by LW's counsel.  LW and their counsel are, of course, encouraged to comply with Rule 502(b), but Plaintiffs are unwilling to trust this as the sole protection of their privilege.

The Special Master has recommended that, as an alternative, Plaintiffs be given the opportunity to review these "59 percent or less" documents for privilege prior to their release. This seems the wisest course.  Plaintiffs will agree to review these documents within a reasonable period of time.  If such documents are not privileged, Plaintiffs will agree to their release by the Special Master to LW.  If Plaintiffs believe they are privileged, they will submit those documents to the Special Master for human review and her recommendation to the Court about whether such documents are privileged, leaving the ultimate determination of privilege to the Court.  Alternatively, Plaintiffs propose submitting those documents directly to the Court for *in camera* review.

## C.    Non-Correspondence Documents

LW objected that documents which are "non-correspondence" cannot be privileged.  The Special Master rightly noted that the file format in which a document is saved is not indicative of privilege, and further that privilege/work product cannot be determined simply by whether the

PLAINTIFFS' RESPONSE TO REPORT AND RECOMMENDATION OF SPECIAL MASTER (DKT. 311) – 6

document is "correspondence" or "non-correspondence."  It is the content of those documents

that is determinative, not the format they happen to take.

Dated this 13th day of May 2013.


/s/ Thomas A. Banducci
Thomas A. Banducci
*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of May 2013 a true and correct copy of the within and foregoing instrument was served on the following registered participants via automatic electronic notice from the Court's ECF system.

J. Walter Sinclair          jwsinclair@stoel.com
Nicole C. Hancock          nchancock@stoel.com
Jason E. Prince            jeprince@stoel.com

/s/ Thomas A. Banducci
Thomas A. Banducci